# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT CINCINNATI

| | |
|---|---|
| **MICHAEL DEAN VAUGHAN,** | Civil Action No.: **1:26 C V 6 1 0** |
| Plaintiff, | District Judge: **J. McFARLAND** |
| v. | Magistrate Judge: **M. LITKOVITZ** |
| **DANIEL P. DRISCOLL, in his official capacity as Secretary of the Army,** | (Related Case: No. 1:26-cv-589) |
| Defendant. | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND PETITION FOR WRIT OF MANDAMUS UNDER THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. §§ 701–706, AND THE MANDAMUS ACT, 28 U.S.C. § 1361

### JURY TRIAL NOT DEMANDED

### INTRODUCTION

1. On June 20, 2008, an armor-piercing RPG struck Plaintiff Michael Dean Vaughan's vehicle during a coordinated enemy ambush in Paktika Province, Afghanistan. The blast threw him against the armored door and Blue Force Tracker. It left him with retinal hemorrhages and a suspected macular venous occlusion in his right eye, with an associated sector or arcuate visual field defect that the Department of Veterans Affairs has recorded as an active diagnosis; chronic migraines; and tinnitus. Two soldiers wounded in the same engagement received Purple Hearts. Plaintiff did not. He has waited eighteen years.

2. This action does not ask the Court to award the Purple Heart, to award back pay, or to adjudicate entitlement to veterans' benefits. It challenges the Army's March 2, 2026, return-without-action and seeks only an order vacating that return and requiring the

Defendant to accept Plaintiff's exhausted DD Form 149 application for processing by the Army Board for Correction of Military Records ("ABCMR"), to submit it for board consideration, and to issue a written decision within a court-ordered deadline. No panel of the ABCMR has ever reviewed the evidence. Instead, the ABCMR returned the application (Exhibit A), claiming it contained no evidence that administrative remedies had been exhausted. That claim was false. The application contained the Army Human Resources Command ("HRC") denial letter (Exhibit B) as Exhibit 15 of a 108-page ABCMR exhibit packet. The DD Form 149 (Exhibit C) stated on its face that HRC had issued a final denial. And forty-eight days before the return, the Army Review Boards Agency's ("ARBA") own representative had acknowledged the HRC denial in writing (Exhibit D) and assured Plaintiff that no new case would be required.

3. The March 2, 2026, return occurred against the background of a materially altered Line of Duty determination in Plaintiff's military records. The physician-signed determination documenting Plaintiff's combat injuries was altered after the signing physician departed military employment, and the altered version entered the administrative record that the ABCMR has never reviewed.

4. The March 2, 2026, return causes concrete, ongoing injury. Its central effect is to deny Plaintiff the merits determination to which he is entitled on his request to correct his official military record, and to perpetuate the absence of the Purple Heart from his DD-214 and permanent record, a continuing reputational and dignitary harm. The return also forecloses collateral consequences that flow from Purple Heart recognition. These are concrete and particularized injuries personal to Plaintiff, not generalized grievances.

## PARTIES

5. Plaintiff Michael Dean Vaughan is a former First Lieutenant in the Kentucky Army National Guard and a veteran of Operation Enduring Freedom, 2008 through 2009, 201st Engineer Battalion. He resides in Hamilton, Butler County, Ohio. He holds a 100% Permanent and Total disability rating from the Department of Veterans Affairs for combat-related post-traumatic stress disorder, traumatic brain injury, migraines, and tinnitus, all arising from his service in Afghanistan.

6. Defendant Daniel P. Driscoll is the Secretary of the Army. He is sued in his official capacity. The ABCMR operates under his authority pursuant to 10 U.S.C. § 1552 and is administered by ARBA, 251 18th Street South, Suite 385, Arlington, Virginia 22202.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question), 5 U.S.C. § 706 (Administrative Procedure Act), and 28 U.S.C. § 1361 (mandamus).

8. The Administrative Procedure Act, 5 U.S.C. § 706(2)(A), authorizes this Court to hold unlawful and set aside agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Section 706(1) authorizes this Court to compel agency action unlawfully withheld or unreasonably delayed.

9. The Mandamus Act, 28 U.S.C. § 1361, authorizes this Court to compel an officer or employee of the United States to perform a duty owed to the plaintiff.

10. Venue is proper under 28 U.S.C. § 1391(e)(1) because Plaintiff resides in Hamilton, Ohio (Butler County), within the Southern District of Ohio, Western Division, and because this is an action against an officer of the United States acting in his official capacity. This action is related to *Vaughan v. Department of Defense*, No. 1:26-cv-589 (S.D. Ohio), a

pending Freedom of Information Act and Privacy Act action arising from the same military records, and Plaintiff will file a notice of related case.

11.     Plaintiff does not ask this Court to award the Purple Heart, to determine whether Plaintiff's injuries qualify for the decoration, or to adjudicate entitlement to any monetary or veterans' benefit. Because Plaintiff seeks only equitable and procedural relief and no money damages, this action does not lie within the exclusive jurisdiction of the Court of Federal Claims under the Tucker Act, and judicial review under the Administrative Procedure Act is available because Plaintiff has no other adequate remedy. 5 U.S.C. § 704.

## STATEMENT OF FACTS

### A. The Combat Injury and Line of Duty Determination

12.     Plaintiff served on federal active duty in support of Operation Enduring Freedom. His Certificate of Release or Discharge from Active Duty (DD Form 214) reflects that he was ordered to active duty in accordance with 10 U.S.C. § 12302, served in Afghanistan from May 14, 2008 through February 26, 2009 in a designated imminent danger pay area, was awarded the Combat Action Badge and the Afghanistan Campaign Medal with Campaign Star, and was released from active duty on March 22, 2009 with an Honorable characterization of service. His mobilization under 10 U.S.C. § 12302 placed him in Title 10 federal active-duty status throughout the deployment.

13.     On June 20, 2008, while serving as a platoon leader and convoy commander on a route-clearance mission from COP Zerok to FOB Orgun-E in Paktika Province, Afghanistan, Plaintiff's vehicle was struck by an armor-piercing rocket-propelled grenade during a coordinated enemy ambush. The blast wounded his gunner and threw Plaintiff against the

interior of the vehicle, causing a traumatic brain injury that produced chronic headaches and a documented retinal injury and right-eye visual field defect. Two soldiers wounded in the same engagement received the Purple Heart; Plaintiff did not.

14. On March 2, 2009, Kendra Garbrecht, O.D., a civilian optometrist providing services under Army contract at the Fort McCoy Soldier Readiness Center, examined Plaintiff and signed the original DA Form 2173, the Statement of Medical Examination and Duty Status (Exhibit E). That form documented Plaintiff's reduced vision and headaches, recorded that the injury was incurred in the line of duty because of the June 20, 2008, blast, and found that it was likely to result in a permanent partial disability.

15. On October 26, 2009, the Department of Veterans Affairs confirmed it was developing Plaintiff's claims for diminished hearing, eye injury and blurred vision, diminished vision, ringing in the ears, mild traumatic brain injury, and headaches due to head injury. On February 19, 2010, the VA granted service connection for tinnitus (claimed as ringing in the ears) and for residuals of traumatic brain injury, the latter expressly claimed as and encompassing headaches, blurred vision, diminished vision, and eye injury, each effective March 23, 2009, and deferred a decision on post-traumatic stress disorder. The same decision evaluated Plaintiff's claimed bilateral hearing loss but did not grant service connection for that condition at that time. The effective date the VA assigned, March 23, 2009, is the day following Plaintiff's release from active duty. Plaintiff had filed that initial claim on May 1, 2009, within one year of his March 22, 2009 release, which is why 38 U.S.C. § 5110(b)(1) fixed the effective date at the day following release; the award therefore established, as a matter of federal record, that these conditions were incurred in or aggravated by Plaintiff's Title 10 active-duty service. The VA thereafter

increased Plaintiff's combined disability rating over the following years, from 20% effective March 23, 2009, as reflected in its July 17, 2025 decision and later rating actions, ultimately evaluating his service-connected post-traumatic stress disorder at 100%, the highest schedular evaluation the law allows for that condition, effective December 23, 2024, and establishing his disability as 100% Permanent and Total as of that same date, with special monthly compensation and basic eligibility for Dependents' Educational Assistance under 38 U.S.C. Chapter 35.

### B. Material Alteration of the Line of Duty Determination

16. The original physician-signed DA Form 2173 (Exhibit E) was materially altered, and the altered version that entered the administrative record (Exhibit F) changed the documented injury description, downgraded the disability prognosis from permanent to temporary, and reversed the finding that the injury was likely to result in a claim against the Government. None of these changes were authorized by the signing physician.

17. Dr. Garbrecht could not have made these alterations. She worked at Fort McCoy as a contract optometrist from August 2008 through December 2011. The LOD case file (NGB Case No. KY-12-01060) was not initiated until August 25, 2012, more than eight months after her departure. The alterations were therefore made by someone other than the examining provider who signed the form.

18. The altered LOD (Exhibit F) was approved on January 7, 2013, by COL Roberta Niedt for "*Post Concussive Headache Syndrome*" only, omitting the retinal injury entirely. The HRC relied on this altered version when it denied Plaintiff's Purple Heart application on October 23, 2025. The altered form's reversal of the claim-likelihood finding to "IS NOT" is further contradicted by the VA's February 19, 2010, award of service-connected

compensation for the same blast-related conditions, which necessarily determined that those injuries did result in a compensable claim against the Government.

19. A side-by-side comparison of Exhibits E and F shows these alterations on the face of the two forms. The integrity of a service member's medical and line-of-duty records is precisely the subject the ABCMR is empowered to examine and correct under 10 U.S.C. § 1552, and a materially altered Line of Duty determination in the official record is therefore a matter for the Board's consideration, not for unilateral disposition by ARBA staff. The ABCMR has never examined this alteration, because the March 2, 2026, return prevented any board review of the application.

### C. The HRC Denial and ABCMR Application

20. On January 28, 2025, Plaintiff submitted a signed DA Form 4187 with seventeen supporting documents to the Army Awards and Decorations Branch at Fort Knox, Kentucky. The Army Human Resources Command, which houses that Branch, confirmed in writing on July 1, 2025, that the request was under review by the HRC Surgeon.

21. On February 24, 2025, ARBA received Plaintiff's ABCMR application under Case No. AR20250004526. On May 16, 2025, ARBA confirmed receipt and stated the application was under review.

22. On October 23, 2025, the Army Human Resources Command, through its Army Awards and Decorations Branch, issued its final denial (Exhibit B), signed by MAJ Francisco H. Bongio II, Chief, Awards and Decorations Branch. The denial letter expressly directed Plaintiff to "appeal this decision to the Army Board for Correction of Military Records (ABCMR), the highest appellate authority on personnel matters," and recommended that Plaintiff provide the denial and all prior correspondence from the Command "to

demonstrate you have exhausted all available administrative remedies." The HRC denial exhausted the Army-directed predicate administrative step for ABCMR review.

23.    On November 24, 2025, Plaintiff mailed an amended submission to ARBA via USPS Priority Mail, including a new DD Form 149 (Exhibit C) that stated in Block 18: "All administrative remedies were exhausted; the Army HRC issued a final denial on Oct 23, 2025, and directed appeal to the ABCMR." The HRC denial letter (Exhibit B) was included as Exhibit 15 of his 108-page ABCMR exhibit packet.

### D. ARBA's Acknowledgment and the Challenged Return

24.    On January 13, 2026, COL Jeffrey, Customer Service Representative at ARBA, responded to Plaintiff by email (Exhibit D). COL Jeffrey expressly acknowledged the HRC denial and stated: "By flagging this concern for us, we are able to hold off on any further processing of your case until the 25 October HRC denial letter is processed and included within your existing case file. This means there won't be a requirement to start over with a new case." COL Jeffrey further invited Plaintiff to email a copy of the HRC denial letter so that ARBA could add it to the case file promptly and closed by stating that ARBA "look[ed] forward to the completion of [the] case." ARBA therefore acknowledged the HRC denial, committed to including it in the existing case file, and anticipated completing the case, all before the March 2, 2026, return that claimed no evidence of exhaustion existed.

25.    On March 2, 2026, Deputy Director Leslie D. Plooster returned the application without action (Exhibit A), stating the application "does not contain evidence of an application to or a decision from the Army Awards and Decorations Branch." The Army Awards and Decorations Branch operates within the Army Human Resources Command, and the

October 23, 2025 HRC denial (Exhibit B), submitted to the ABCMR as Exhibit 15 of the packet, is the decision of that Branch, signed by its Chief; the return's stated ground, that the application contained no decision from the Army Awards and Decorations Branch, was therefore contradicted by the face of the application itself. The return closed the pending application and denied Plaintiff board merits review despite the HRC denial letter (Exhibit B), the DD Form 149 statement of exhaustion in Block 18 (Exhibit C), and ARBA's January 13, 2026, written acknowledgment (Exhibit D). The return did not identify any remaining administrative remedy Plaintiff had failed to pursue.

26. The return cannot be sustained as the disposition of a reconsideration request. AR 15-185, paragraph 2-15, authorizes reconsideration only of "an ABCMR decision," and the corresponding return ground, paragraph 2-8(d), applies only where "no new evidence was submitted with a request for reconsideration." No ABCMR panel had ever decided Plaintiff's Purple Heart application; it was pending under Case No. AR20250004526 and had never reached the merits. With no prior decision in existence, the reconsideration framework and the no-new-evidence return ground that depends on it are categorically inapplicable. The only return ground the March 2, 2026, action could invoke is non-exhaustion under paragraph 2-8(b), and the HRC denial (Exhibit B) defeats it. Timeliness could not supply an alternative ground either: under AR 15-185, paragraphs 2-4 and 1-8(e), an untimely application is for the Board to deny, or to excuse in the interest of justice, not for staff to return without action. Having satisfied the single applicable criterion, Plaintiff was entitled to panel consideration under paragraphs 1-8(a) and 2-10.

27. The ABCMR's own governing regulation, Army Regulation 15-185, paragraph 2-5, requires the Board to consider applications submitted under 10 U.S.C. § 1552 once

exhaustion of administrative remedies has been demonstrated. Its codified counterpart, 32 C.F.R. § 581.3, is a duly promulgated legislative rule carrying the force of law. AR 15-185, paragraph 2-8, exhaustively lists only four grounds for return without action: failure to sign the application, non-exhaustion, lack of jurisdiction, and absence of new evidence on reconsideration. Paragraph 1-8(a) is unconditionally mandatory: ABCMR members "will" review all applications that are properly before them. Because the application was signed, within the Board's jurisdiction, and not a reconsideration request, the only ground the March 2, 2026, return could rest on was non-exhaustion under paragraph 2-8(b); that ground is contradicted by the facially sufficient exhaustion materials and ARBA's own prior written acknowledgment. The return therefore violated AR 15-185, paragraphs 1-8(a), 2-5, and 2-8, and 32 C.F.R. § 581.3.

### E. Ongoing Injury and Standing

28.     The March 2, 2026, return causes ongoing, concrete injury. It denies Plaintiff the merits determination to which he is entitled on his request to correct his official military record under 10 U.S.C. § 1552, and it perpetuates the absence of the Purple Heart from the DD-214 and official record that Plaintiff must present to federal agencies and employers, a continuing reputational and dignitary harm. The return also forecloses collateral consequences that flow from Purple Heart recognition. These are concrete and particularized injuries personal to Plaintiff, not generalized or merely informational grievances. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 440–41 (2021); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340–42 (2016). Because Plaintiff asserts a procedural right tied to those concrete interests, the ordinary standards for redressability and immediacy are relaxed: he need not establish that the Board would ultimately award the decoration, only

that vacatur of the return could influence the agency's decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 572 n.7 (1992); *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009); *Massachusetts v. EPA*, 549 U.S. 497, 517–18 (2007). These injuries are traceable to the challenged return and redressable by vacatur and an order requiring board adjudication.

## COUNT I

### Arbitrary and Capricious Agency Action
### 5 U.S.C. §§ 704, 706(2)(A)

29. Plaintiff incorporates by reference all preceding paragraphs.

30. The March 2, 2026, return-without-action was final agency action within the meaning of 5 U.S.C. § 704. It satisfies both prongs of the governing test: it marked the consummation of the agency's decision-making process, closing Plaintiff's pending application, and it is an action by which legal consequences flow, because it stripped Plaintiff of broad merits review and required him to abandon his claim or begin again. *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997); *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597–99 (2016); *Air Brake Sys., Inc. v. Mineta*, 357 F.3d 632, 638 (6th Cir. 2004). A district court within this Circuit has exercised jurisdiction over an Administrative Procedure Act challenge to an ABCMR staff return-without-action on precisely this theory. *Conner v. U.S. Dep't of the Army*, 6 F. Supp. 3d 717, 720–22 (W.D. Ky. 2014). The mere theoretical possibility that Plaintiff might refile does not deprive the return of finality. *Sackett v. EPA*, 566 U.S. 120, 127 (2012).

31. The return is not action committed to agency discretion by law under 5 U.S.C. § 701(a)(2). That exception is "very narrow" and applies only where there is "no law to apply." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 410 (1971). AR 15-

185, paragraph 1-8(a), directs that ABCMR members "will" review all applications properly before them, and paragraph 2-8 enumerates the only conditions under which an application "may be returned without action." Those provisions supply a meaningful standard against which the return is judged, defeating the discretion bar. *Heckler v. Chaney*, 470 U.S. 821, 830 (1985); *Webster v. Doe*, 486 U.S. 592, 599–601 (1988). The Court interprets AR 15-185 and 10 U.S.C. § 1552 de novo and owes no deference to the agency's contrary reading of its own return-without-action criteria. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024).

32. Because this Count challenges the Board's failure to follow its own procedural intake regulation, rather than any substantive military judgment about whether Plaintiff earned the decoration, the unusually deferential standard applied to a correction board's merits determinations does not govern. *See Kreis v. Sec'y of the Air Force*, 406 F.3d 684, 686 (D.C. Cir. 2005) (review of a board's application of a procedural regulation does not call for the heightened deference reserved for military judgments); cf. *Bolton v. Dep't of the Navy Bd. for Corr. of Naval Records*, 914 F.3d 401, 407 (6th Cir. 2019) (heightened deference applies to a board's substantive determinations).

33. The March 2, 2026, return was arbitrary, capricious, and not in accordance with law. It rested on a factually incorrect premise, that the application lacked evidence of prior HRC action, when the HRC denial letter was contained in Exhibit 15 and identified on the face of the DD Form 149 in Block 18. An agency may not rest a decision on a premise contradicted by the record before it, and a reviewing court may not supply a reasoned basis the agency itself did not give. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42–43 (1983).

34. The return also contradicted ARBA's own prior written assurance without explanation. Even if ARBA had authority to revisit the intake status of the application after January 13, 2026, it was required to display awareness that it was changing position and to give a reasoned explanation for doing so, particularly given Plaintiff's reliance. The March 2, 2026, return provided none. *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221–22 (2016); *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515–16 (2009).

35. Finally, the return violated the Army's own governing procedures. An agency must follow its own regulations, even where those regulations limit otherwise discretionary actions, and even where the procedures exceed what the law would otherwise require. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266–68 (1954); *Service v. Dulles*, 354 U.S. 363, 388 (1957); *Vitarelli v. Seaton*, 359 U.S. 535, 539–40 (1959); *Morton v. Ruiz*, 415 U.S. 199, 235 (1974). Where the regulation vests a merits determination in the Board, ARBA staff may not make that determination in the Board's stead. *Lipsman v. Sec'y of the Army*, 335 F. Supp. 2d 48, 54–55 (D.D.C. 2004). And the ABCMR misapprehends its duties as a record-correction body when it refuses to adjudicate an application on the asserted ground that the applicant's submission is incomplete. *Haselwander v. McHugh*, 774 F.3d 990, 996, 1000 (D.C. Cir. 2014). This Court should hold the March 2, 2026, return unlawful, vacate it, and order the ABCMR to accept the application and issue a written decision.

## COUNT II
### Agency Action Unlawfully Withheld
### 5 U.S.C. § 706(1)

36. Plaintiff incorporates by reference all preceding paragraphs.

37. In the alternative, if the Court concludes that the March 2, 2026, return is not final agency action reviewable under § 706(2)(A), Defendant has unlawfully withheld a discrete agency action that it is required by law to take: acceptance and processing of Plaintiff's exhausted DD Form 149 application for ABCMR consideration, submission of that application for board review under AR 15-185, paragraph 2-10, and issuance of a written decision. Relief under § 706(1) lies precisely where, as here, a plaintiff identifies a discrete agency action the agency is legally required to take, and the Court may compel the agency to act without dictating the result. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64–65 (2004). The discrete, mandatory duties are supplied by AR 15-185, paragraph 1-8(a) (members "will" review all applications properly before them) and paragraph 2-10 (panel consideration of each application properly brought before it). The adjudication of an individual correction application is a discrete "order" within the meaning of 5 U.S.C. § 551(6), and a board's procedural refusal to adjudicate is reviewable without heightened deference. *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1513–14 (D.C. Cir. 1989); *Kreis v. Sec'y of the Air Force*, 406 F.3d 684, 686 (D.C. Cir. 2005).

38. Plaintiff completed the Army-directed prerequisite review before HRC. HRC denied relief and expressly directed appeal to the ABCMR. Plaintiff submitted the HRC denial with his amended DD Form 149, and ARBA acknowledged receipt. No further exhaustion requirement exists under the Army's own regulatory scheme, and this Court may not impose one beyond what the agency itself has established. *Darby v. Cisneros*, 509 U.S. 137, 153–54 (1993). In the alternative, if the Court characterizes the refusal as delay rather than withholding, the delay is unreasonable under the factors set forth in *Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984).

## COUNT III

### Mandamus
### 28 U.S.C. § 1361

39. Plaintiff incorporates by reference all preceding paragraphs.

40. If the Court concludes that the March 2, 2026, return is not final agency action reviewable under the APA, Plaintiff seeks mandamus in the alternative. Mandamus requires: (1) a clear right to relief; (2) a clear, nondiscretionary duty to act; and (3) no other adequate remedy. *Heckler v. Ringer*, 466 U.S. 602, 616–17 (1984). The writ issues to compel performance of a clear nondiscretionary duty. *Pittston Coal Grp. v. Sebben*, 488 U.S. 105, 121 (1988).

41. First, Plaintiff has a clear right to have an exhausted correction application accepted for board consideration under the Army's own governing procedures. Second, Defendant has a clear, nondiscretionary duty to process such an application rather than reject it on a factually incorrect exhaustion determination. AR 15-185, paragraph 1-8(a), requires that ABCMR members "will" review all applications properly before them. The procedural duty to accept and adjudicate, as distinct from the discretionary substantive decision whether to grant relief, is mandatory. *Kreis*, 866 F.2d at 1514; *Lipsman*, 335 F. Supp. 2d at 54. Third, no other adequate remedy exists because the challenged return itself prevents Plaintiff from obtaining board adjudication through ordinary agency channels, and the material alteration of his Line of Duty determination described above, which the Board has never examined, demonstrates that resubmission without judicial oversight would not result in a merits adjudication.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court:

A. Declare, pursuant to 28 U.S.C. § 2201, that the March 2, 2026, return-without-action is unlawful, arbitrary, capricious, an abuse of discretion, and not in accordance with law, in violation of 5 U.S.C. § 706(2)(A), AR 15-185, and 32 C.F.R. § 581.3;

B. Hold unlawful, set aside, and vacate the March 2, 2026, return-without-action pursuant to 5 U.S.C. § 706(2)(A);

C. Declare that Plaintiff has satisfied the exhaustion requirement of AR 15-185, paragraph 2-5, and 32 C.F.R. § 581.3, and that the ABCMR has a mandatory, nondiscretionary procedural duty to accept the application and submit it to the Board for consideration;

D. Order the Secretary of the Army, acting through the ABCMR, to accept and process Plaintiff's existing application as continuously pending since its original submission, without requiring a new filing and without loss of its original filing date, to docket the application for consideration by a panel of the Board on the merits, and to issue a written decision within ninety (90) days of the date of this Court's order, or such other period the Court deems practicable;

E. In the alternative, and to the extent the Court finds the challenged return to be agency action unlawfully withheld or unreasonably delayed, compel the Defendant to take that action pursuant to 5 U.S.C. § 706(1), namely the acceptance, docketing, and written adjudication of Plaintiff's application;

F. In the further alternative, issue a writ of mandamus, pursuant to 28 U.S.C. § 1361, directing the Secretary of the Army to perform his nondiscretionary procedural duty under 10 U.S.C. § 1552, AR 15-185, and 32 C.F.R. § 581.3;

G. Retain jurisdiction to ensure compliance with the Court's order; and

H.     Award Plaintiff his costs of suit, together with any fees and expenses to which he may be

entitled under the Equal Access to Justice Act, 28 U.S.C. § 2412, to the extent available,

and grant such other and further relief as this Court deems just and proper.


Dated: June 22, 2026
Respectfully submitted,

_____

Michael Dean Vaughan, Pro Se
First Lieutenant, U.S. Army (Former)
500 Leo Drive, Hamilton, Ohio 45013
(859) 743-1355 | warhacker6@gmail.com


## NOTICE OF SERVICE PURSUANT TO FED. R. CIV. P. 4(i)

Pursuant to Fed. R. Civ. P. 4(i), because this is an action against an officer of the United States

sued in an official capacity, Plaintiff will serve the summons and a copy of this Complaint upon:

(1) the United States Attorney for the Southern District of Ohio, by delivery to the office or to

the civil-process clerk at the United States Attorney's Office, 221 East Fourth Street, Suite 400,

Cincinnati, Ohio 45202; (2) the Attorney General of the United States, U.S. Department of

Justice, 950 Pennsylvania Avenue NW, Washington, D.C. 20530, by registered or certified mail;

and (3) Defendant Daniel P. Driscoll, Secretary of the Army, 101 Army Pentagon, Washington,

D.C. 20310, by registered or certified mail. All service will be completed within ninety days of

filing as required by Fed. R. Civ. P. 4(m).

**CERTIFICATION PURSUANT TO 28 U.S.C. § 1746**

I, Michael Dean Vaughan, declare under penalty of perjury under the laws of the United States of America that the factual statements contained in the foregoing Complaint concerning my own military service, the documents I submitted to the Army, and the communications I received from the Army are true and correct to the best of my knowledge, information, and belief.

Executed on June 22, 2026.

_____

Michael Dean Vaughan

**INDEX OF EXHIBITS**

The following exhibits are attached to and incorporated in this Complaint pursuant to Fed. R. Civ. P. 10(c). The documentary record supporting the underlying combat injury is contained in the administrative record; the exhibits attached here are limited to the records establishing the procedural defect in the challenged return and the alteration of the Line of Duty determination central to it:

| | |
|---|---|
| **Exhibit A** | Army Review Boards Agency return-without-action, signed by Deputy Director Leslie D. Plooster, dated March 2, 2026 (the agency action challenged in this Complaint). |
| **Exhibit B** | Army Human Resources Command denial of Plaintiff's Purple Heart application, dated October 23, 2025. |
| **Exhibit C** | DD Form 149 bearing the Block 18 statement of exhaustion, mailed to the Army Review Boards Agency on November 24, 2025. |
| **Exhibit D** | Army Review Boards Agency acknowledgment email from COL Jeffrey, dated January 13, 2026. |
| **Exhibit E** | Physician-signed DA Form 2173 (original Line of Duty determination), examination conducted March 2, 2009, Fort McCoy Soldier Readiness Center. |
| **Exhibit F** | NGB-approved DA Form 2173 (altered Line of Duty determination), approved January 7, 2013, NGB Case No. KY-12-01060. |

# EXHIBIT A

*Army Review Boards Agency return-without-action, signed by Deputy Director Leslie D. Plooster, dated March 2, 2026 (the agency action challenged in this Complaint).*

Vaughan v. Driscoll, S.D. Ohio (Civil Action No. _____)



**DEPARTMENT OF THE ARMY**
ARMY REVIEW BOARDS AGENCY
251 18TH STREET SOUTH, SUITE 385
ARLINGTON, VA 22202-3531

March 2, 2026

Case Management Division/md
AR20250004526, Vaughan, Michael D.

Mr. Michael Vaughan
500 Leo Dr
Hamilton OH 45013-5211

Dear Mr. Vaughan:

This letter is in response to your enclosed application to the Army Board for Correction of Military Records (ABCMR) concerning award of the Purple Heart.

Army Regulation 15-185, paragraph 2-5, states that the Board cannot consider any application until the applicant has exhausted all administrative remedies available to correct the alleged error or injustice. Before the ABCMR can accept your application, you must provide evidence that you submitted a request for award of the Purple Heart to the Army Awards and Decoration Branch. A review of your application does not contain evidence of an application to or a decision from the Army Awards and Decorations Branch.

You may mail your request and supporting evidence for award of the Purple Heart to: Commander, US Army Human Resources Command, ATTN: AHRC-PDP-A (Awards and Decorations Branch), 1600 Spearhead Division Avenue, Fort Knox, Kentucky 40122. If you have questions, send an email to:

usarmy.knox.hrc.mbx.tagd-ask-hrc@army.mil

In view of the foregoing, your application is returned to you without prejudice and without action being taken by the Board. If after you receive a decision from the Army Awards and Decorations Branch you still feel that an error or injustice exists, you may resubmit an application to the ABCMR. Please include with your application a copy of the denial of your request from the Army Awards and Decorations Branch, a copy of all related military records that you have, and any other evidence to support your application.

Sincerely,

X ⟋⟋⟋

Leslie D. Plooster
Deputy Director, Case Management Division
Signed by: USA



Printed on ♻ Recycled Paper

# EXHIBIT B

*Army Human Resources Command denial of Plaintiff's Purple Heart application, dated October 23, 2025.*

Vaughan v. Driscoll, S.D. Ohio (Civil Action No. _____)



**DEPARTMENT OF THE ARMY**
**U.S. ARMY HUMAN RESOURCES COMMAND**
**1600 SPEARHEAD DIVISION AVENUE, DEPARTMENT 480**
**FORT KNOX, KY 40122-5408**

October 23, 2025

Awards and Decorations Branch

Mr. Michael D. Vaughan
4352 Michigan Avenue
Covington, KY 41015-1655

Dear Mr. Vaughn:

This is in response to your recent inquiry concerning your desire to be issued an award of the Purple Heart.

Based upon review of the provided documentation and military medical databases available to our office, we are unable to authorize issuance of the Purple Heart. Pursuant to Army Regulation 600-8-22 (Military Awards), paragraph 2-7 and appendix section C-3, award of the Purple Heart is not authorized for mild traumatic brain injury (mTBI) or concussions that do not either result in extended loss of consciousness or restriction from full duty for a period greater than 48 hours due to persistent signs, symptoms, or physical finding of impaired brain function. Combat theater and unit command policies, or medical protocols, mandating rest periods, light duty, or "down time" and/or the administration of pain medication (for example acetaminophen, aspirin, or ibuprofen) in the absence of persistent symptoms of impairment following concussive incidents do not constitute qualifying treatment for a concussive injury. Further, to qualify for the award of the Purple Heart, a wound must have been of such severity that it required treatment, not merely examination, by a medical officer.

We acknowledge receipt of the forwarded medical records documenting your medical evaluations in February 2009 and October 2012 which notate chronic headaches as a result of your exposure to a rocket propelled grenade (RPG) blast on June 20, 2008; however, these evaluations occurred 8 months after the incident. This is not to say we refute your involvement in such an incident, nor that this incident may be the cause of later medical symptoms; however, as more time elapses between an incident and the diagnosis and treatment of an injury, it becomes more difficult to relate an injury to a specific enemy action.

-2-

Nevertheless, in order to perform all due diligence, our office consulted with the U.S. Army Human Resources Command Surgeon's Office, which determined there is no evidence you were treated by a medical officer for any reason immediately following the incident nor were you given a disposition of "not fit for full duty" following the RPG blast. Further, there is no indication you required any follow-up treatment, such as intensive occupational therapy, speech therapy, or neuro-rehabilitation treatment, as a result of the RPG. As such, without significant evidence to the contrary, this incident does not meet the strict regulatory criteria governing the Purple Heart..

Please note, your final course of action is to appeal this decision to the Army Board for Correction of Military Records (ABCMR), the highest appellate authority on personnel matters. You may contact ABCMR by completing a DD Form 149 (Application for Correction to Military Record) and following the submission instructions on the form. A copy of this form is available through the Army Review Boards Agency website at: https://www.army.mil/arba#org-other-military-records-corrections. Reconsiderations must be forwarded to ABCMR through the appellate process. We recommend providing this and all prior correspondence from this Command to demonstrate you have exhausted all available administrative remedies.

This decision does not detract from your great achievements during your military career. We are grateful for your faithful and dedicated service to our Nation.

Sincerely,

*Francisco H. Bonglo II*

Francisco H. Bonglo II
Major, U.S. Army
Chief, Awards and Decorations Branch

# EXHIBIT C

*DD Form 149 bearing the Block 18 statement of exhaustion, mailed to the Army Review Boards Agency on November 24, 2025.*

Vaughan v. Driscoll, S.D. Ohio (Civil Action No. _____)

CUI (when filled in)

*(Updated 20250213)*

| APPLICATION FOR CORRECTION OF MILITARY RECORD<br>UNDER THE PROVISIONS OF TITLE 10, U.S. CODE, SECTION 1552<br>*(Please read Privacy Act Statement and instructions on back BEFORE completing this application.)* | *OMB No. 0704-0003*<br>*OMB approval expires:*<br>*12/31/2025* |
|---|---|

**Do Not Write Below**

CASE NUMBER

## SECTION 1: SERVICE MEMBER *(The person whose discharge is to be reviewed.)*  PLEASE PRINT OR TYPE INFORMATION

1. BRANCH AT TIME OF ERROR OR INJUSTICE  [X] ARMY  [ ] NAVY  [ ] AIR FORCE  [ ] COAST GUARD  [ ] MARINE CORPS  [ ] SPACE FORCE

2. COMPONENT AT TIME OF ERROR OR INJUSTICE  [ ] REGULAR  [ ] RESERVE  [ ] GUARD

| 3. NAME WHILE SERVING | LAST | Vaughan |
| | FIRST | Michael |
| 4. CURRENT NAME *(If different)* | LAST | |
| | FIRST | |

5a. SSN WHILE SERVING  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 | CURRENT SSN *(If different)*

5b. *(provide, if applicable)*  [ ] DoD ID NUMBER  [ ] SERVICE NUMBER  [ ] TIN

6. CURRENTLY SERVING  [ ] YES  [X] NO  | 7. DATE OF SEPARATION 13 July 2013 | 8. GRADE/RANK AT DISCHARGE  O2/1LT

9. MAILING ADDRESS *(If Service Member is deceased, skip this question.)*

STREET  500 Leo Dr

CITY, STATE/APO, COUNTRY/FOREIGN ADDRESS  Hamilton, Ohio | ZIP  45013

EMAIL  warhacker6@gmail.com | PHONE 859-743-1355

## SECTION 2: SEPARATION INFORMATION *(if not currently serving)*

10. CHARACTER OF SERVICE *(If by court-martial, also state Type of Court in space provided.)*

[X] HONORABLE  [ ] UNDER HONORABLE CONDITIONS (GENERAL)  [X] UNDER OTHER THAN HONORABLE CONDITIONS  [ ] BAD CONDUCT DISCHARGE  [ ] DISHONORABLE

[ ] UNCHARACTERIZED/ENTRY LEVEL SEPARATION  [ ] DISMISSAL  [ ] OTHER _____  TYPE OF COURT

## SECTION 3: ERROR OR INJUSTICE

11a. IS THIS A REQUEST FOR RECONSIDERATION OF A PRIOR APPLICATION TO THE BOARD?  [ ] YES  [X] NO

11b. IF YES AND KNOWN, PROVIDE CASE NUMBER _____  AND DECISION DATE

12. CATEGORY *(Select all that apply. Example: Administrative Correction - change in name, DOB, SSN.)*

[ ] ADMINISTRATIVE CORRECTION  [ ] PAY & ALLOWANCE  [X] DECORATIONS/AWARDS  [ ] PERFORMANCE/ EVALUATIONS/ DEROGATORY INFORMATION

[ ] DISABILITY  [ ] PROMOTIONS/ RANK  [ ] DISCHARGE/ SEPARATION  [ ] OTHER _____

13. WHAT CORRECTION AND RELIEF ARE YOU REQUESTING FOR THIS ERROR OR INJUSTICE IN THE SERVICE MEMBER'S RECORD? *(required)* *(Limited to 455 characters)*

I request correction of my military record to reflect award of the Purple Heart for the ocular blast injury sustained on 20 June 2008 in Afghanistan. The injury resulted in permanent right-eye vision loss, was documented by Army medical officers, and determined In Line of Duty. The Army HRC issued a final denial on Oct 23, 2025, and no further administrative remedy exists.

14. ARE ANY OF THE FOLLOWING ISSUES/CONDITIONS RELATED TO YOUR REQUEST: *(Select all that apply.)*

[ ] PTSD  [ ] TBI  [ ] OTHER MENTAL HEALTH  [ ] SEXUAL ASSAULT/ HARASSMENT  [ ] DADT  [ ] REPRISAL/ WHISTLEBLOWER

15. WHY SHOULD THIS CORRECTION BE MADE? *(Required) (Limited to 545 characters)*

The correction is required to remove an injustice resulting from the Army HRC's improper denial of my Purple Heart on Oct 23, 2025. My documented ocular blast injury from an enemy RPG on 20 June 2008 resulted in permanent vision loss and was confirmed In Line of Duty by Army medical officers. HRC acknowledged receipt of all supporting evidence but applied concussion criteria that do not apply. I exhausted all remedies, and the record remains incorrect without correction.

16. APPROXIMATE DATES THE ERROR OR INJUSTICE WAS DISCOVERED:  25 Oct 2025

IF THE DATE OF DISCOVERY IS MORE THAN 3 YEARS AGO, EXPLAIN YOUR DELAY AND WHY THE BOARD SHOULD CONSIDER YOUR REQUEST. REFER TO BLOCK 18.

**DD FORM 149, FEB 2025**
PREVIOUS EDITION IS OBSOLETE.

CUI (when filled in)

Controlled by:
CUI Category:
LDC:
POC:

Page 1 of 3

CUI (when filled in)

*(Updated 20250213)*

| 17. DO YOU WISH TO APPEAR AT YOUR OWN EXPENSE BEFORE THE BOARD IN WASHINGTON, D.C.? | [X] YES. (IN PERSON) | [ ] YES. (VIA VIDEO / TELEPHONE) | [ ] NO. CONSIDER MY APPLICATION BASED ON RECORDS & EVIDENCE. |
|---|---|---|---|

**18. ADDITIONAL REMARKS/CONTINUATION OF INFORMATION** *(If more space is needed, please submit additional narrative as required.) (Limited to 360 characters)*

All administrative remedies were exhausted; the Army HRC issued a final denial on Oct 23, 2025 and directed appeal to the ABCMR. A supporting memorandum and exhibits detail the eye injury, Line of Duty findings, and regulatory basis confirming eligibility for the Purple Heart and correction of the record.

## SECTION 4: EVIDENCE, RECORDS, AND ADDITIONAL REMARKS

**19. IN SUPPORT OF THIS CLAIM, THE FOLLOWING DOCUMENTARY EVIDENCE IS ATTACHED (LIST DOCUMENTS):** *Example evidence / records: Separation packet, medical documents (e.g. diagnosis, VA rating), post-service documents (e.g. diplomas, professional certificates, character references), and/or investigations. (Do **not** submit irreplaceable original documents. They will NOT be returned.)*

| a. See attached memo and exhibit list | b. | c. |
|---|---|---|
| d. | e. | f. |
| g. | h. | i. |

LIST ADDITIONAL SUPPORTING DOCUMENTS *(if needed)*

See attached memo and exhibits

**IMPORTANT NOTE:** If the basis of your request involves the effects of one or more **physical, medical, mental,** and/or **behavioral health condition(s)** and if available, please attach copies of any VA rating decisions, relevant medical records, and counseling treatment records.

## SECTION 5: CLAIMANT *(if other than the Service Member)*

**20. RELATION TO SERVICE MEMBER**

Claimants are normally Service Members seeking to correct their own records. The Service Member or former Service Member is not able to sign the application because they are [ ] DECEASED [ ] INCAPACITATED, OR [ ] OTHER _____

Please designate appropriate signatory below:

a. I am the heir of the Service Member: [ ] WIDOW(ER) [ ] SON [ ] DAUGHTER [ ] PARENT [ ] SIBLING [ ] OTHER _____

Please provide Service Member's death certificate and marriage license or heir's birth certificate, as appropriate to prove relationship.

b. I am the [ ] CONSERVATOR [ ] GUARDIAN [ ] ATTORNEY-IN-FACT OF THE SERVICE MEMBER

Please provide a notarized power of attorney or court appointment of conservatorship or guardianship to prove status.

c. I am the [ ] SPOUSE [ ] FORMER SPOUSE [ ] DEPENDENT OF THE SERVICE MEMBER

Please provide marriage license, divorce decree, or dependent birth certificate, as appropriate.

| 21. NAME | LAST | |
|---|---|---|
| | FIRST | |

| 22. MAILING ADDRESS | STREET |
|---|---|

| CITY, STATE/APO, COUNTRY/FOREIGN ADDRESS | ZIP |
|---|---|
| EMAIL | PHONE |

## SECTION 6: REPRESENTATIVE OR COUNSEL *(if applicable)*

The following representative is authorized to receive and provide communication regarding this application.

| 23. NAME | LAST | |
|---|---|---|
| | FIRST | |

| 24. ORGANIZATION |
|---|

| 25. MAILING ADDRESS | STREET |
|---|---|

| CITY, STATE/APO, COUNTRY/FOREIGN ADDRESS | ZIP |
|---|---|
| EMAIL | PHONE |

## SECTION 7: SIGNATURE

**26. I WOULD LIKE TO RECEIVE ALL CORRESPONDENCE & DOCUMENTS ELECTRONICALLY.** *(This may reduce overall processing time.)* [ ] YES [ ] NO

**CERTIFICATION: I MAKE THE FOREGOING STATEMENTS, AS PART OF THIS CLAIM, WITH FULL KNOWLEDGE OF THE PENALTIES INVOLVED FOR WILLFULLY MAKING A FALSE STATEMENT OR CLAIM.** *(U.S. Code, Title 18, Section 287 and 1001, provide that an individual shall be fined under this title or imprisoned not more than 5 years, or both.)*

| 27a. SIGNATURE (Required) | 27b. DATE SIGNED |
|---|---|
| *[signature]* | 24 November 2025 |

| 28. IS THIS REQUEST RELATED TO ANY OF THESE WARS OR CONTINGENCY OPERATIONS? | [ ] Operation Freedom Sentinel (OFS) (01/01/2015 - Present) | [ ] Persian Gulf War (08/02/1990 - 11/30/1995) |
|---|---|---|
| | [ ] Operation Inherent Resolve (OIR) (08/08/2014 - Present) | [ ] Vietnam War (01/01/1961 - 04/30/1975) |
| | [X] Operation Enduring Freedom (OEF) (09/11/2001 -12/31/2014) | [ ] Korean War (06/27/1950 - 07/27/1954) |
| [X] YES [ ] NO | [ ] Operation New Dawn (OND) (09/01/2010 - 12/15/2011) | [ ] World War II (12/07/1941 - 09/02/1945) |
| | [ ] Operation Iraqi Freedom (OIF) (03/19/2003 - 08/31/2010) | [ ] OTHER |

**DD FORM 149, FEB 2025**

PREVIOUS EDITION IS OBSOLETE.

CUI (when filled in)

Page 2 of 3

CUI (when filled in)

*(Updated 20250213)*

## INSTRUCTIONS FOR COMPLETION OF DD FORM 149

Under Title 10 United States Code Section 1552, current and former members of the Armed Forces, their lawful or legal representatives, spouses and ex-spouses of former members seeking Survivor Benefit Program (SBP) benefits, and civilian employees seeking correction of military records other than those related to civilian employment, who feel that they have suffered an injustice as a result of error or injustice in military records may apply to their respective Boards for Correction of Military (or Naval) Records (BCMR/BCNR) for a correction of their military records. These Boards are the highest level appellate review authority in the military. Therefore, applicants must exhaust all other administrative correction and appeal procedures before applying to the Boards.

This form collects the basic data that the Boards need to process and act on the request. Type or print all entries for all applicable items. If the item is not applicable, enter "NA." If the space provided is insufficient, attach an extra page.

SECTION 3, ITEM 12. State the specific correction of record and all relief desired. If possible, identify exactly what document or information in your record you believe to be erroneous or unjust and indicate what correction you want made to it. For additional errors or injustices, use Section 8.

ITEM 14. To justify correction of a military record, you must explain and show to the satisfaction of the Board that the alleged entry or omission in the record is in error or unjust.

ITEM 15. U.S. Code, Title 10, Section 1552(b), states that no correction may be made unless the request is made within three years after the discovery of the error or injustice, but the Board may excuse failure to file within three years in the interest of justice.

ITEM 16. Indicate whether you attribute the error or injustice to your involvement in a particular war or contingency operation.

ITEM 17. A hearing is not required to ensure the Board's full and impartial consideration of your application. If the Board decides that a hearing is warranted, you, your witnesses, and your counsel may attend at no expense to the government, except that counsel may be provided if the Inspector General has reported reprisal against you.

SECTION 4. You are responsible for obtaining and submitting clear, legible evidence to persuade the Board to grant your request, including any evidence that is not already in your military record. Do not assume a document is in your record. Your evidence should be submitted with this form and may include, for example, military records and orders, witnesses' sworn affidavits, and a brief of arguments supporting your request. List your evidence in item 19 and, if your case involves a medical condition, submit relevant medical records and VA rating decisions as noted in item 20. Do not send irreplaceable original documents because they will not be returned.

SECTION 5. The person whose record will be corrected if relief is granted must sign this form in Section 7. If that person is deceased or incompetent to sign, a lawful claimant, such as a spouse, widow(er), next of kin (child, parent, or sibling), or legal representative, may sign the form. Proof of death, incompetency, or power of attorney must be submitted. Former spouses may apply as claimants for SBP issues .

SECTION 6. You may want counsel if your case is complex. Some veterans and service organizations furnish counsel without charge. Contact your local post or chapter.

For detailed information on Application and Board Procedures, see: Army Regulation 15-185 and www.arba.army.pentagon.mil; Navy - SECNAVINST.5420.193 and www.hq.navy.mil/bcnr/bcnr.htm; Air Force Instruction 36-2603, Air Force Pamphlet 36-2607, and www.afpc.randolph.af.mil/safmrbr; Coast Guard - Code of Federal Regulations, Title 33, Part 52 and www.uscg.mil/Resources/legal/BCMR.

### MAIL COMPLETED APPLICATIONS TO APPROPRIATE ADDRESS BELOW

| ARMY | NAVY AND MARINE CORPS | AIR FORCE | COAST GUARD |
|---|---|---|---|
| Army Review Boards Agency 251 18th Street South, Suite 385 Arlington, VA 22202-3531 https://arba.army.pentagon.mil | Board for Correction of Naval Records 701 S. Courthouse Rd, Suite 1001 Arlington, VA 22204-2490 http://www.secnav.navy.mil/mra/bcnr / Pages/default.aspx | Air Force Board for Correction of Military Records 3351 Celmers Lane Joint Base Andrews, MD 20762-6435 https://afrba-portal.cce.af.mil/ | DHS Office of the General Counsel Board for Correction of Military Records, Stop 0485 2707 Martin Luther King Jr. Ave. S.E. Washington, DC 20528-0485 https://www.uscg.mil/Resources/lega l/ BCMR/ |

The public reporting burden for this collection of information is estimated to average 1 hour per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding the burden estimate or burden reduction suggestions to the Department of Defense, Washington Headquarters Services, at whs.mc-alex.esd.mbx.dd-dod-information-collections@mail.mil. Respondents should be aware that notwithstanding any other provision of law, no person shall be subject to any penalty for failing to comply with a collection of information if it does not display a currently valid OMB control number.

RETURN COMPLETED FORM TO THE APPROPRIATE ADDRESS ON PAGE 3.

### PRIVACY ACT STATEMENT

**AUTHORITY:** 10 U.S.C. 1552, Correction of military records: claims incident thereto; and E.O. 9397 (SSN), as amended.
**PRINCIPAL PURPOSE(S):** To initiate an application for correction of military record. The form is used by Board members for review of pertinent information in making a determination of relief through correction of a military record. Completed forms are covered by correction of military records SORNs maintained by each of the Services or the Defense Finance and Accounting Service.
**ROUTINE USE(S):** The DoD Routine Uses can be found in the applicable system of records notices below: Army (https://dpcld.defense.gov/Privacy/SORNsIndex/DOD-wide-SORN-Article-View/Article/569931/a0015-185-sfmr/) Navy and Marine Corps (http://dpcld.defense.gov/Privacy/SORNsIndex/DOD-wide-SORN-Article-View/Article/570411/nm01000-1/) Air Force (https://dpcld.defense.gov/Privacy/SORNsIndex/DOD-wide-SORN-Article-View/Article/569833/f036-safcb-a/) Defense Finance and Accounting Service (http://dpcld.defense.gov/Privacy/SORNsIndex/DOD-wide-SORN-Article-View/Article/570192/t7340b/) Coast Guard (https://www.gpo.gov/fdsys/pkg/FR-2013-10-02/html/2013-23991.htm) Official Military Personnel Files: Army (http://dpcld.defense.gov/Privacy/SORNsIndex/DOD-wide-SORN-Article-View/Article/570054/a0600-8-104-ahrc.aspx) Navy (http://dpcld.defense.gov/Privacy/SORNsIndex/DOD-wide-SORN-Article-View/Article/570310/n01070-3/) Marine Corps (http://dpcld.defense.gov/Privacy/SORNsIndex/DOD-wide-SORN-Article-View/Article/570626/m01070-6/) Air Force (http://dpcld.defense.gov/Privacy/SORNsIndex/DOD-Component-Article-View/Article/569821/f036-af-pc-c/) Coast Guard (http://www.gpo.gov/fdsys/pkg/FR-2011-10-28/html/2011-27881.htm)
**DISCLOSURE:** Voluntary. However, failure by a claimant to provide the information not annotated as "optional" may result in a denial of your application. A claimant's SSN is used to retrieve these records and links to the member's official military personnel file and pay record.

**DD FORM 149, FEB 2025**
PREVIOUS EDITION IS OBSOLETE.

CUI (when filled in)

Page 3 of 3

1

**DEPARTMENT OF THE ARMY**
Army Board for Correction of Military Records (ABCMR)
1901 South Bell Street
Arlington, VA 22202-4508

**MEMORANDUM FOR** Army Board for Correction of Military Records (ABCMR)

**SUBJECT:** Petition for Correction of Military Records – Award of the Purple Heart for Combat-Related Eye Injury, Migraines, and Blast Residuals

**DATE:** November 24th, 2025

**1. Personal Information**

Michael Vaughan
500 Leo Dr.
Hamilton, Ohio 45013
Email: warhacker6@gmail.com
Phone: 859-743-1355

**2. Purpose**: Award of the Purple Heart for Combat-Related Eye Injury, Migraines, and Blast Residuals

**Rebuttal to 23 October 2025 HRC Determination**

This memorandum rectifies the factual and regulatory inaccuracies contained in the United States Army Human Resources Command's denial letter dated 23 October 2025. The denial improperly assessed my application based on concussion-specific exclusions outlined in AR 600-8-22, Appendix C-3. The injury in question is not classified as a mild traumatic brain injury. I am formally requesting the conferment of the Purple Heart medal for a documented ocular blast wound, which resulted in permanent partial loss of vision in my right eye. This injury was caused by an enemy RPG strike on 20 June 2008, during combat operations in Afghanistan.

The denial erroneously stated that the award is not authorized absent extended loss of consciousness or duty restriction. This provision is not applicable. The injury is an anatomic, objective wound—a retinal venous occlusion with retinal hemorrhage— diagnosed by an Army medical officer and directly linked to the RPG blast. AR 600-8-22

2

does not exclude blast-related ocular injuries and has historically recognized permanent partial vision loss caused by hostile action as qualifying for the Purple Heart.

The denial further asserted that there was "no evidence" of treatment by a medical officer or follow-up care. This claim is contradicted by multiple documented encounters: deployed care for migraines beginning 16 September 2008, emergency treatment at Bagram on 22 February 2009, identifying "Explosion/Blast" as the mechanism of injury with a 90% loss of right-eye vision, and an ophthalmologic diagnosis on 2 March 2009 at Fort McCoy by CPT Kendra Garbrecht, O.D., which confirmed a permanent visual impairment and initiated a Line of Duty investigation. These records satisfy the requirements outlined in AR 600-8-22, paragraph 2-8, for treatment and documentation by medical officers.

HRC further clarified that there is no finding of being in the Line of Duty. However, this assertion is factually incorrect. The completed and physician-signed DA Form 2173, dated 2 March 2009, established that the injury occurred in the Line of Duty and explicitly identified the 20 June 2008 RPG blast as the causative incident. According to AR 600-8-4 and 38 U.S.C. § 105, this determination holds legal significance and affirms the causation related to military service.

Finally, delayed reporting does not nullify eligibility. Department of Defense guidance and clinical research confirm that blast-related injuries are frequently underreported in combat due to operational demands. My medical timeline demonstrates an unbroken progression from the RPG blast through documented evaluation and treatment both in theater and post-deployment. AR 600-8-22, para. 2-8(h) recognizes explicitly internal injuries resulting from enemy explosions as qualifying wounds even when no external bleeding is present. The qualifying wound is a permanent, objective,

3

blast-induced ocular injury resulting in documented retinal venous occlusion and irreversible vision loss.

For these reasons, the denial was founded on the misapplication of regulatory standards and an incomplete evaluation of the medical evidence. The injury satisfies all criteria outlined in AR 600-8-22, paragraph 2-8: it was caused by hostile action, necessitated treatment by a medical officer, is formally documented, and resulted in a permanent and objectively verifiable wound. Correction is warranted under 10 U.S.C. § 1552(a) because the denial resulted from factual error and regulatory misapplication, creating an injustice.

### 3. Summary of Incident and Injury

- 20 June 2008 blast
- 16 Sept 2008 first treatment
- 22 Feb 2009 acute collapse
- 2 Mar 2009 diagnosis + LOD
- 19 Feb 2010 VA recognition, backdated to March 2009

The medical evidence demonstrates a consistent pattern of blast-related injury affecting the visual, auditory, and neurological systems. Following the explosion caused by an RPG on 20 June 2008, I experienced migraines, tinnitus, and visual impairment, none of which were present before deployment, as verified by my baseline audiogram dated 5 September 2007 and pre-deployment medical records. The abrupt 90% loss of vision in the right eye documented on 22 February 2009, the retinal venous occlusion diagnosed on 2 March 2009, and the subsequent development of tinnitus and VA-confirmed hearing loss collectively indicate a single blast mechanism impacting multiple cranial structures. The VA's service-connection granted on 19 February 2010 for

4

residuals of traumatic brain injury, including ocular injury and tinnitus, further corroborates a common causal pathway and affirms the continuity between the initial combat incident and subsequent post-deployment treatment and care. HRC's denial is therefore factually incorrect. I received treatment from military medical officers, have a completed LOD, and possess objective medical documentation of a blast-induced ocular wound. The injury meets all requirements under AR 600-8-22 and requires correction by the ABCMR. I am **not** requesting the Purple Heart for migraines, tinnitus, hearing loss, or mild TBI, but solely for the **ocular blast wound** resulting in permanent vision loss.

### 4. Integrated Medical and VA Treatment Timeline (2008–2025)

a. 16 September 2008 – First medical treatment for migraines

- Received treatment at a deployed medical facility.
- Prescribed Fioricet for migraine management.
- No prior history of migraines.
- The first medical record associating the onset of symptoms with the RPG blast in June 2008.
- VA pharmacy records verify ongoing prescriptions for Fioricet and butalbital from 2008 to 2013, demonstrating sustained, documented treatment continuity. Furthermore, the VA continues to provide treatment for my migraines.

b. 22 February 2009 – Acute neurological and visual collapse in Afghanistan

- Experienced a sudden 90% loss of vision in the right eye, accompanied by migraine, vomiting, and physical collapse.
- The emergency room record at Bagram explicitly indicates the mechanism of injury as **"Explosion/Blast."
- An eye examination revealed a visual acuity of 20/40 and notable visual disturbances.
- The healthcare provider documented a progression of symptoms consistent with prior head and eye trauma resulting from the June 2008 blast.

c. 2 March 2009 – Ophthalmologic diagnosis confirming blast injury

- Evaluated by CPT Kendra Garbrecht, O.D., at Ireland Army Community Hospital (Fort Knox), currently temporarily assigned to Fort McCoy.
- Diagnoses include:
  - Macular venous occlusion
  - Retinal hemorrhages

- Permanent visual impairment in the right eye (visual acuity range of 20/40 to 20/100).

- Diagnosis explicitly linked to the 20 June 2008 RPG blast.

- LOD initiated the same day.

d. Doctor Signed Line of Duty Determination

DA Form 2173 concludes:

- Cause: RPG blast, 20 June 2008
- Injury: Right-eye retinal injury and chronic migraines
- Determination: In Line of Duty

This directly contradicts HRC's claim that no LOD existed.

e. VA continuity-of-care and medical nexus: Migraines (50% rating)

- VA determined chronic migraines began in combat and continued post-service.
- VA confirmed long-term prescriptions (Fioricet, Butalbital/Acetaminophen/Caffeine).
- VA rating acknowledges combat origin and symptom chronicity.

TBI Residuals (10% rating, effective 29 August 2014)

- VA recognized headaches, blurred vision, diminished vision, and physiological symptoms attributable to blast exposure.
- Supports the exact injury mechanism identified in Army records.

Tinnitus (10% rating, effective 23 March 2009)

- VA tinnitus rating confirms blast overpressure exposure consistent with RPG detonation.

Medication continuity

- VA pharmacy logs show uninterrupted refills for migraine medication 2008–2013. I continue to receive migraine medication.
- Establishes a clear, unbroken chain of care from initial injury through long-term VA treatment.

**These VA findings serve as federal medical determinations that support, corroborate, and reinforce the original Army diagnoses and LOD findings.**

**5. Why the Purple Heart Criteria Are Met (AR 600-8-22)**

1. Injury caused by hostile enemy action

- RPG blast strike documented in combat records, LOD, and ER documentation.

2. Injury required treatment by a medical officer

- Treated by military medical officers in 2008, 2009, and throughout the VA system.
- Ophthalmologic specialist evaluation on 2 March 2009 constitutes qualifying treatment.

3. Treatment must be documented

- Multiple military medical records confirm diagnosis and treatment.
- VA records (2008–2025) further substantiate continuity and severity.

4. Injury must be a wound or concussion requiring treatment

Not a subjective claim—this includes:

- o VA-rated Retinal vascular damage
- o VA-rated Retinal hemorrhage
- o VA-rated Permanent decreased visual acuity
- o VA-rated Chronic migraines requiring prescription medication
- o VA-rated TBI residuals
- o VA-rated tinnitus

**This constitutes objective physical injury directly caused by an enemy RPG.**

## 6. Corrections to Errors in HRC Denial

The denial by the Human Resources Command (HRC) on 23 October 2025 reviewed my request under concussion-specific provisions outlined in AR 600-8-22, Appendix C-3. However, this standard is not applicable to my case. I am not seeking the Purple Heart for a mild traumatic brain injury. The qualifying injury is a documented ocular blast wound, which has resulted in a permanent partial loss of vision in my right eye.

On 2 March 2009, CPT Kendra Garbrecht, O.D., diagnosed retinal venous occlusion, retinal hemorrhage, and permanent visual impairment directly linked to the 20 June 2008 RPG blast, confirming an objective, anatomic wound caused by hostile

action. AR 600-8-22 contains no exclusion for blast-related ocular injuries and has historically recognized permanent vision loss as qualifying for the Purple Heart.

The finalized DA Form 2173 Line of Duty determination, dated 2 March 2009, affirms that the injury was sustained in the Line of Duty and was caused by the RPG blast. This assertion directly contradicts the grounds for denial and fulfills the documentation requirements outlined in AR 600-8-22, paragraph 2-8.

Furthermore, the adjudication by the VA dated 19 February 2010 offers official federal medical confirmation of the injury occurring in close temporal proximity to the RPG blast, establishing service connection for residuals of traumatic brain injury (TBI), including blurred and diminished vision as well as eye injury, effective from 23 March 2009. This evidence directly contradicts HRC's conclusion that no validated injury or subsequent treatment was present.

For these reasons, the concussion-based rationale in the denial is not applicable. The injury is an ocular wound that fully satisfies all regulatory requirements for the award of the Purple Heart.

## 7. Application of AR 600-8-22 to Ocular Blast Injuries

ABCMR has previously granted Purple Hearts for delayed-reported blast-related internal injuries when objective findings and an LOD exist.

## 8. Requested Relief

**I request the ABCMR:**

- Direct correction of my military record to reflect the award of the Purple Heart for the 20 June 2008 ocular blast injury and instruct HRC to update all personnel systems accordingly.

## 9. Closing

8

The military and VA medical documentation, the formal Line of Duty (LOD) determination physically signed by the physician, and the chronology of symptoms all unequivocally establish that my right-eye injury and associated chronic migraines directly resulted from a verified RPG blast on 20 June 2008. The injury satisfies all criteria outlined in AR 600-8-22 for the conferment of the Purple Heart. Additionally, the Department of Veterans Affairs' 19 February 2010 service-connection determination provides independent federal confirmation of ocular blast injury beginning on 23 March 2009, reinforcing the Army's own medical findings and supporting the correction of my military record.

Very Respectfully,

Michael Vaughan, M.Sc. in Cybersecurity
Ph.D. Student, Information Technology
1LT, U.S. Army (Former)
500 Leo Dr.
Hamilton, Ohio 45013
**E-mail:** warhacker6@gmail.com
**Date:** November 24th, 2025

## Exhibit List

Exhibit 1 – Combat Documentation of RPG Attack (20 June 2008)
• CAB orders and operational records confirming engagement, ambush, and RPG strike.

Exhibit 2 – Initial Post-Blast Medical Treatment (16 September 2008)
• Deployed medical record documenting new-onset migraines and Fioricet prescription.
• Establishes first medical intervention tied to RPG event.

Exhibit 3 – Bagram ER Record – Acute Vision Loss (22 February 2009)
• ER notes documenting 90% loss of vision in the right eye, migraine, and vomiting.
• Mechanism identified as "Explosion/Blast."
• Demonstrates objective treatment.

Exhibit 4 – Military Acute Concussion Evaluation (MACE) (23 February 2009)
• Mechanism marked "Explosion/Blast."
• Symptoms recorded: visual disturbance, headache, memory issues, ringing in ears.
• Confirms neurological involvement and blast origin.

Exhibit 5 – Fort McCoy / Ireland Army Hospital Ophthalmology Evaluation (2 March 2009)
• CPT Kendra Garbrecht, O.D. diagnosis of:
– Retinal venous occlusion
– Retinal hemorrhage
– Permanent right-eye visual impairment
• Directly attributes injury to 20 June 2008 RPG blast.

Exhibit 6 – DA Form 2173 Line of Duty Determination (2 March 2009)
• Official Army finding: In Line of Duty
• Cause: RPG blast
• Confirms no misconduct and establishes service causation.

Exhibit 7 – Sworn Statements Corroborating Blast and Injury (2009)
• SSG Kinder and 2LT Vaughan statements confirming:
– multiple RPG impacts
– immediate neurologic effects
– progressive visual decline

Exhibit 8 – DD Form 2697 Medical Assessment (Pre-Separation, March 2009)
• Provider documents:
– "Grenade blast exposure"
– headaches and blurry vision
– ophthalmology referral
• Confirms chronicity predating VA involvement.

Exhibit 9 – VA Rating Decision (19 February 2010)
• Grants service connection for:
– tinnitus
– residuals of TBI including eye injury
• Effective 23 March 2009, within two weeks of redeployment.
• Confirms continuity from Army to VA.

Exhibit 10 – Audiogram Comparison (2007–2012)
• 5 September 2007 Army reference audiogram establishing normal pre-deployment hearing with no tinnitus.
• VA audiology records showing tinnitus and hearing loss requiring right-ear hearing aid fitting on 19 March 2013, based on 8 June 2012 audiometric results.

Exhibit 11 – Original Submission to Army HRC (28 January 2025)
• DA Form 4187 and email confirming receipt.

Exhibit 12 – HRC Acknowledgment of Review (1 July 2025)
• Confirms packet under HRC Surgeon review.

Exhibit 13 – HRC Confirmation of Updated Evidence Receipt (2 July 2025)
• Acknowledges receipt of addendum, eye-injury records, and original LOD.

Exhibit 14 – Updated Purple Heart Addendum Memorandum (2 July 2025)
• Clarifies qualifying injury and regulatory basis.

Exhibit 15 – Final HRC Denial Letter (23 October 2025)
• Directs applicant to ABCMR and confirms exhaustion.

# TABLE OF AUTHORITIES

| Assertion | Supporting Authority | Explanation |
|---|---|---|
| Injury caused by hostile enemy action | Army Regulation 600-8-22 (Military Awards), para. 2-8 | AR section 600-8-22 stipulates that the Purple Heart is conferred for injuries incurred during active engagement against an adversary or as a consequence of hostile actions. In essence, the injury must be directly attributable to enemy forces (e.g., combat or terrorist assault), a criterion satisfied in this instance by the documented RPG explosion during combat. |
| Wound required treatment by a medical officer | Army Regulation 600-8-22, para. 2-8e | The regulation specifies that a qualifying wound "must have required treatment, not merely examination, by a medical officer," and this treatment must be documented in the Soldier's medical record. This criterion ensures the injury was significant enough to need medical intervention. In this case, the soldier's eye injury and concussion symptoms received medical officer treatment (in the field and follow-up), fulfilling this requirement. |
| Medical treatment was officially documented | Army Regulation 600-8-22, para. 2-8e | AR 600-8-22 additionally mandates that the fact of medical treatment be formally documented. This entails the existence of medical records or equivalent documentation regarding the wound and associated treatment. The injuries sustained by the soldier were documented in field hospital reports, a DA Form 2173 Line of Duty report, and VA medical files, thereby fulfilling the requirement for proper documentation criterion. |
| Injury was an objective wound (not just | Army Regulation 600-8-22, para. 2-8(g)–(h) | Army policy delineates a clear distinction between qualifying wounds, including concussions, and non-qualifying complaints. AR 600-8-22 explicitly recognizes concussion injuries resulting from enemy explosions as eligible for the Purple Heart and emphasizes that a physical lesion is not necessary if the injury is genuine and |

| Assertion | Supporting Authority | Explanation |
|---|---|---|
| subjective symptoms) | | properly documented. Conversely, purely subjective conditions or mild, transient issues (such as PTSD, tinnitus, or a mild TBI that did not result in loss of consciousness or duty limitations) do not warrant the Purple Heart decoration. In this instance, the soldier's injuries—namely retinal hemorrhage, vision loss, and diagnosed TBI/migraine residuals—are tangible medical conditions rather than solely self-reported symptoms, thereby satisfying the standard of "wound" for the award. |
| Formal Line of Duty (LOD) determination supports entitlement | Army Regulation 600-8-4 (Line of Duty Investigations) & 38 U.S.C. §105 (LOD presumption) | According to Army regulations, an injury sustained within a combat zone is presumed to be "In Line of Duty" unless misconduct is involved. AR 600-8-4 also states that a "presumptive in line of duty" determination applies in cases involving hostile actions. An approved Line of Duty (LOD) investigation officially confirms that the injury was incurred during service and is not due to the soldier's misconduct. In this case, the DA Form 2173 LOD report, signed by an Army physician, specifically concluded that the injuries from the June 2008 blast are considered "In Line of Duty." This designation has important legal implications: it shows that the Army recognizes the injury as service-connected and eligible for benefits or awards. Additionally, the Department of Veterans Affairs (VA) is generally required to accept an injury classified as in line of duty for service connection purposes. |
| VA's findings confirm continuity and service-connection | Department of Veterans Affairs regulations (38 C.F.R. §§ 3.303, 3.304) and ABCMR precedent | The Department of Veterans Affairs granted the soldier service-connected disability ratings (e.g., 50% for combat-induced migraines, 10% for TBI residuals, 10% for tinnitus), which necessitate evidence demonstrating that these conditions originated in or were caused by his military service. This VA documentation, including extensive treatment records and an unbroken prescription history for migraine medications beginning in 2008, corroborates the chronic nature of the injury sustained during service and continuing post-service. While the Army's criteria for awarding a Purple Heart are distinct, the VA's independent medical findings enhance credibility by illustrating that symptoms such as headaches and visual impairment have persisted since the RPG attack. (Note: VA disability determinations are subject to different legal standards; the Army Board has acknowledged that VA service-connection alone does not automatically qualify for a Purple Heart, but it constitutes compelling supporting evidence regarding the long-term effects of the combat injury.) Under *Hasler v. United States*, 718 F.2d 199 (Fed. Cir. 1983), correction boards may remedy injustice when new, relevant evidence is presented. The VA's 19 February 2010 rating decision is material because it confirms the existence, chronicity, and service origin of the ocular blast injury beginning 23 March 2009, weeks after redeployment. Consistent with *Doyle v. United States*, 599 F.2d 984 (Ct. Cl. 1979), exhaustion occurred when HRC issued its final denial, making the ABCMR the sole authority for relief. Further, under *Reale v. United States*, 208 F.3d 1016 (Fed. Cir. 2000), the ABCMR must consider new evidence not previously evaluated and may correct records where failure to do so perpetuates error or injustice. Therefore, the VA determination is directly relevant, predates HRC's review, and supports correction of the applicant's record. |
| Combat | RAND Corp. | Research and Department of Defense officials have documented that mild traumatic |

12

| Assertion | Supporting Authority | Explanation |
|---|---|---|
| injuries are often underreported or not immediately treated | "Invisible Wounds of War" study (2008) and DoD clinical guidelines, and DoDI 6490.11 (2012) was implemented because blast injuries were routinely missed in theater, confirming that delayed reporting is medically and operationally consistent with combat conditions. | brain injuries (mTBIs) incurred in combat frequently remain unreported at the moment they occur. For instance, a RAND study focusing on OEF/OIF veterans discovered that approximately 57% of individuals who tested positive for a probable TBI were never assessed by a medical professional for brain injury. Cultural factors, including stigma and mission-related pressure, often compel soldiers to "tough out" symptoms in the field. Subsequent research similarly indicates that around half of soldiers experiencing concussions did not seek medical attention at the time, even as awareness of the issue increased by 2014. This context is significant: the absence of immediate treatment in June 2008 aligned with common combat behaviors, with the soldier reporting and seeking treatment for the injury once it became severe. Policy modifications implemented by the Department of Defense in 2012 (**specifically DoDI 6490.11**) institutionalized this understanding by requiring medical evaluation for any service member involved in a blast or concussive event, due to the high incidence of missed mTBI cases in theater. In conclusion, the initial under-reporting of the headache does not undermine the legitimacy of the injury; rather, it exemplifies the well-documented tendency for combat-related mTBIs to be underreported. |
| Continuity of care from Army to VA (unbroken treatment chain) | VA and Army medical records (2008–2025) | The evidence links the 2008 combat injury to current disabilities, with service records documenting the initial eye injury and migraines (e.g., September 2008 clinic visit, February 2009 Bagram ER, March 2009 Fort McCoy exam). The VA has recognized and treated these conditions since then, with pharmacy records showing migraine medication refills from 2008-2013 and ongoing management. The VA also granted service connection for "Post-concussive headaches (migraine)" and other residuals, confirming the RPG blast caused lasting injuries. This continuous record counters claims the condition was temporary or unrelated to service. |

# EXHIBIT D

*Army Review Boards Agency acknowledgment email from COL Jeffrey, dated January 13, 2026.*

Vaughan v. Driscoll, S.D. Ohio (Civil Action No. _____)

Gmail - RE: Request to Treat November 24, 2025 Submission #... 1 Filed: 06/22/26 Page: 41 of 48... http... 66/22/26 Page: 41 of 48 PAGEID #: 41 776&view=lg...

Case: 1:26-cv-00610-MWM-KLL Doc #: 1 Filed: 06/22/26 Page: 41 of 48 PAGEID #: 41

 Gmail

## RE: Request to Treat November 24, 2025 Submission as Amended Filing – ABCMR Case AR20250004526 - [UNCLASSIFIED]

**USARMY Pentagon HQDA ARBA Mailbox I** <usarmy.pentagon.hqda-arba.mbx.i@army.mil>
Tue, Jan 13, 2026 at 12:18 PM
To: Michael Vaughan <warhacker6@gmail.com>
Cc: USARMY Pentagon HQDA ARBA Mailbox I <usarmy.pentagon.hqda-arba.mbx.i@army.mil>, "Porter, Carrie" <Carrie.Porter@mail.house.gov>, USARMY Pentagon HQDA OCLL Mailbox Congressional Inquiries <usarmy.pentagon.hqda-ocll.mbx.congressional-inquiries@army.mil>

UNCLASSIFIED

Good afternoon, Mr. Vaughan,


Thanks for your email and for bringing this matter to our attention. The Army Review Boards Agency receives approximately 12,000 applications each year. As such, it may take up to 120 days from the date of receipt evidence for it to be processed and included within the case tracking system.


By flagging this concern for us, we are able to hold off on any further processing of your case until the 25 October HRC denial letter is processed and included within your existing case file. This means there won't be a requirement to start over with a new case. We are currently processing mail from July, so if you have a copy of the letter you previously mailed, please feel free to respond with it so that I can quickly add it (and any other evidence you have) to your case file instead of waiting for the mail to be processed. Either way is fine. Appreciate your providing the additional evidence, and we look forward to the completion of your case.


v/r

COL Jeffrey


Customer Service Representative/jj

Army Review Boards Agency

Arlington VA 22202

Email: usarmy.pentagon.hqda-arba.mbx.i@army.mil

Website: arba.army.pentagon.mil

UNCLASSIFIED


**From:** Michael Vaughan <warhacker6@gmail.com>
**Sent:** Wednesday, November 26, 2025 9:05 PM
**To:** USARMY Pentagon HQDA ARBA Mailbox I <usarmy.pentagon.hqda-arba.mbx.i@army.mil>; Porter, Carrie <Carrie.Porter@mail.house.gov>; Michael Vaughan <warhacker6@gmail.com>
**Subject:** Request to Treat November 24, 2025 Submission as Amended Filing – ABCMR Case AR20250004526

You don't often get email from warhacker6@gmail.com. Learn why this is important

**Subject:** Request to Treat November 24, 2025 Submission as Amended Filing – ABCMR Case AR20250004526

Dear Army Review Boards Agency,

I respectfully request that my submission dated **24 November 2025**—including the updated memorandum titled *"Petition for Correction of Military Records – Award of the Purple Heart for Combat-Related Eye Injury, Migraines, and Blast Residuals"* and all accompanying exhibits—be incorporated into my existing case, **ABCMR Docket Number AR20250004526**, as an **amended and superseding submission**.

This filing:

- responds directly to the **23 October 2025 HRC denial**,
- corrects factual and regulatory errors contained in that denial, and
- documents that all administrative remedies have been exhausted.

The requested relief remains unchanged.

**If an Advisory Opinion is obtained in my case, I respectfully request a copy and an opportunity to submit a written rebuttal before final Board action.**

I respectfully request confirmation that:

1. The **November 24, 2025** submission and exhibits have been added to the case file for AR20250004526, and
2. The Board's review will proceed under the existing docket number without reopening or restarting the case.
3. The new documents were mailed via USPS priority mail on November 24th, 2025; Tracking #: 9505513956425328943262

Please advise if any further action is required.

Respectfully,
Michael Vaughan, M.Sc. in Cybersecurity
Ph.D. Student, Information Technology
C: 859-743-1355
warhacker6@gmail.com
mvaughan37845@ucumberlands.edu
www.linkedin.com/in/mikedvaughan

*"Social engineering bypasses all technologies, including firewalls."*
-Kevin Mitnick

Confidentiality Notice: This email message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact Michael Vaughan immediately for instructions about returning or destroying all copies of the original message.

# EXHIBIT E

*Physician-signed DA Form 2173 (original Line of Duty determination), examination conducted March 2, 2009, Fort McCoy Soldier Readiness Center.*

**Vaughan v. Driscoll, S.D. Ohio (Civil Action No. _____)**

## COMPARISON OF EXHIBIT E (ORIGINAL) AND EXHIBIT F (ALTERED)
### DA Form 2173, Statement of Medical Examination and Duty Status
*Vaughan v. Driscoll / ABCMR Case No. AR20250004526*

Both forms purport to document the same March 2, 2009 examination by Kendra Garbrecht, O.D., a Wisconsin-licensed civilian optometrist who worked at the Fort McCoy Soldier Readiness Center. The original (Exhibit E) bears her handwritten signature and her contemporaneous findings. The version that entered the record and that HRC relied upon (Exhibit F) differs in each field below. The exhibits themselves control; this sheet is a demonstrative aid.

| Field on DA Form 2173 | Exhibit E — Original (Garbrecht, signed 2 Mar 2009) | Exhibit F — Altered (NGB-approved 7 Jan 2013) |
|---|---|---|
| Signature (Block 18) | Handwritten signature of Kendra Garbrecht, O.D. | Typed token only: "<<Signed>> Garbrecht Kendra E" — approved after she left federal service (Dec 2011) |
| Grade of record (Block 3) | O-1 (the grade held on the 2 Mar 2009 exam date) | O-2 (a grade attained only after a later promotion) |
| Examination facility (Block 7) | Fort McCoy SRC, Wisconsin (the actual exam site, where the physician worked) | Ireland ACH, Fort Knox, Kentucky — a different State, where the physician held no license, never practiced, and the Soldier was never seen |
| Nature/extent of injury (Block 10) | "Reduced vision in right eye and frequent headaches" | "Chr post-trauma headache" — documented vision loss deleted |
| Claim against Government (Block 11c) | IS likely to result in a claim against the Government | IS NOT likely to result in a claim against the Government |
| Disability prognosis (Block 12) | PERMANENT PARTIAL | TEMPORARY |

**Markers of alteration.** None of the differences above was made or authorized by the signing physician. The medical findings in Blocks 10, 11c, and 12 are reserved to the examining provider (AR 600-8-4, para 3-2; AR 40-66, para 3-4a), and were overwritten rather than corrected by the lined-through, dated, initialed method with a preserved audit trail that AR 40-66, para 3-4e, requires. The examination facility was recorded as a Kentucky hospital where the Wisconsin physician never worked and the Soldier was never examined or treated, contrary to AR 600-8-4, para 3-3 (places must be recorded "definitely and accurately"). The handwritten signature was replaced with a typed token on a form approved after the physician had left federal service, and the grade of record reflects a later promotion — both showing the altered form was generated long after the examination it purports to document.

## STATEMENT OF MEDICAL EXAMINATION AND DUTY STATUS
For use of this form, see AR 600-8-4, the proponent agency is DCS, G-1.

| THRU: *(Include ZIP Code)* | TO: *(Include ZIP Code)* | FROM: *(Include ZIP Code)* |
|---|---|---|
| | | |

| 1. NAME OF INDIVIDUAL EXAMINED *(Last, First, and Middle Initial)* | | 2. SSN | 3. GRADE |
|---|---|---|---|
| Vaughan, Michael D | | 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 | O-1 |

| 4. ORGANIZATION AND STATION | 5. ACCIDENT INFORMATION | |
|---|---|---|
| 201 EN BN (WP1LT0) | a. DATE | b. PLACE *(City and State)* |

### SECTION I - TO BE COMPLETED BY ATTENDING PHYSICIAN OR HOSPITAL PATIENT ADMINISTRATOR

| 6. INDIVIDUAL WAS ☒ OUT PATIENT ☐ ADMITTED ☐ DEAD ON ARRIVAL | 7. NAME OF HOSPITAL OR TREATMENT FACILITY ☐ CIVILIAN ☒ MILITARY Fort McCoy SRC |
|---|---|

| 8. HOUR AND DATE ADMITTED | 9. HOUR AND DATE EXAMINED 1000 hrs, 02 Mar 2009 |
|---|---|

**10. NATURE AND EXTENT OF** ☒ INJURY ☐ DISEASE ☐ RESULTING IN DEATH *(Explain)*
Reduced vision in right eye and frequent headaches

**11. MEDICAL OPINION:**
a. INDIVIDUAL ☐ WAS ☒ WAS NOT UNDER THE INFLUENCE OF ☐ ALCOHOL ☐ DRUGS *(Specify):*
b. INDIVIDUAL ☒ WAS ☐ WAS NOT MENTALLY SOUND *(Attach Psychiatric evaluation if appropriate).*
c. INJURY ☒ IS ☐ IS NOT LIKELY TO RESULT IN A CLAIM AGAINST THE GOVERNMENT FOR FUTURE MEDICAL CARE.
d. INJURY ☒ WAS ☐ WAS NOT INCURRED IN LINE OF DUTY. BASIS FOR OPINION:
Injury occurred 20 June 2008 while in theater as a result of an RPG blast. Sm has since suffered vision loss in his right eye and headaches.

| 12. THE FOLLOWING DISABILITY MAY RESULT ☐ TEMPORARY ☒ PERMANENT PARTIAL ☐ PERMANENT TOTAL | 13. BLOOD ALCOHOL TEST MADE ☐ YES ☐ NO | 14. NO. OF MG ALCOHOL/100 ML BLOOD |
|---|---|---|

**15. DETAILS OF ACCIDENT OR HISTORY OF DISEASE** *(how, where, when)*
Sm was injured in an RPG blast 20 June 2008 while deployed in Afghanistan. Sm continues to experience symptoms of reduced vision in his right eye and frequent headaches.

| 16. DATE 02 Mar 2009 | 17. TYPED OR PRINTED NAME OF ATTENDING PHYSICIAN OR PATIENT ADMINISTRATOR Kendra Garbrecht, O.D. | 18. SIGNATURE |
|---|---|---|

### SECTION II - TO BE COMPLETED BY UNIT COMMANDER OR UNIT ADVISER

| 19. DUTY STATION ☐ PRESENT FOR DUTY ☐ ABSENT WITHOUT AUTHORITY ☐ ABSENT WITH AUTHORITY: ☐ ON PASS ☐ ON LEAVE | 20. HOUR AND DATE OF ABSENCE a. FROM — b. TO |
|---|---|

**21. ABSENCE WITHOUT AUTHORITY MATERIALLY INTERFERRED WITH THE PERFORMANCE OF MILITARY DUTY** *(Explain in item 30 type of duty missed, hours of duty, and how it did or did not interfere with performance)*
☐ YES ☐ NO

| 22. INDIVIDUAL WAS ON ☐ ACTIVE DUTY ☐ ACTIVE DUTY FOR TRAINING ☐ INACTIVE DUTY TRAINING | 23. HOUR AND DATE TRAINING a. BEGAN b. ENDED |
|---|---|

**24. RESERVIST DIED OF INJURIES RECEIVED PROCEEDING** ☐ DIRECTLY TO TRAINING ☐ DIRECTLY FROM TRAINING

| 25. MODE OF TRANSPORTATION | 26. HOUR BEGINNING TRAVEL | 27. DISTANCE INVOLVED | 28. NORMAL TIME FOR TRAVEL |
|---|---|---|---|

**29. DUTY STATUS AT TIME OF DEATH IF DIFFERENT FROM TIME OF INJURY OR CONTRACTION OF DISEASE**
☐ PRESENT FOR DUTY ☐ ABSENT WITH AUTHORITY ☐ ABSENT WITHOUT AUTHORITY

**30. DETAILS OF ACCIDENT - REMARKS** *(If additional space is needed, continue on reverse) (Attach inclosures as necessary)*

| 31. FORMAL LINE OF DUTY INVESTIGATION REQUIRED ☐ YES ☐ NO | 32. INJURY IS CONSIDERED TO HAVE BEEN INCURRED IN LINE OF DUTY *(Not applicable on deaths)* ☐ YES ☐ NO |
|---|---|

| 33. DATE | 34. TYPED NAME AND GRADE OF UNIT COMMANDER OR UNIT ADVISER | 35. SIGNATURE |
|---|---|---|

**DA FORM 2173, OCT 1972** REPLACES DA FORM 2173, 1 JUN 66, WHICH IS OBSOLETE. APD PE v2.01ES

# EXHIBIT F

*NGB-approved DA Form 2173 (altered Line of Duty determination), approved January 7, 2013, NGB Case No. KY-12-01060.*

Vaughan v. Driscoll, S.D. Ohio (Civil Action No. _____)

## STATEMENT OF MEDICAL EXAMINATION AND DUTY STATUS
For use of this form, see AR 600-8-1, the proponent agency is DCSPER

| THRU: (Include ZIP Code) | TO: (Include ZIP Code) | FROM: (Include ZIP Code) |
|---|---|---|
| KY JFHQ | National Guard Bureau, ATTN: NGB-ARP-DA | HSC 201st EN BN |
| 100 Minuteman Parkway | 111 South George Mason Drive | 2519 Lexington AVB |
| Frankfort, KY 40601-6168 | Arlington, VA 22204-1382 | ashland, KY 41101 |

| 1. NAME OF INDIVIDUAL EXAMINED (Last, First, and Middle Initial) | 2. SSN | 3. GRADE |
|---|---|---|
| VAUGHAN, MICHAEL DEAN | 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 | O2 |

| 4. ORGANIZATION AND STATION | 5. ACCIDENT INFORMATION | |
|---|---|---|
| 0201 EN BN    HHC | a. DATE 20080620 0953 | b. PLACE (City and State) Afghanistan, |

**SECTION I - TO BE COMPLETED BY ATTENDING PHYSICIAN OR HOSPITAL PATIENT ADMINISTRATOR**

| 6. INDIVIDUAL WAS ☒ OUT PATIENT ☐ ADMITTED ☐ DEAD ON ARRIVAL | 7. NAME OF HOSPITAL OR TREATMENT FACILITY Ireland ACH | ☐ CIVILIAN ☒ MILITARY |
|---|---|---|

| 8. HOUR AND DATE ADMITTED | 9. HOUR AND DATE EXAMINED 20090302 1408 |
|---|---|

**10. NATURE AND EXTENT OF** ☒ INJURY ☐ DISEASE ☐ RESULTING IN DEATH (Explain)
Chr post-trauma headache

**11. MEDICAL OPINION:**
a. INDIVIDUAL ☐ WAS ☒ WAS NOT UNDER THE INFLUENCE OF ☐ ALCOHOL ☐ DRUGS (Specify):
b. INDIVIDUAL ☒ WAS ☐ WAS NOT MENTALLY SOUND (Attach Psychiatric evaluation if appropriate).
c. INJURY ☐ IS ☒ IS NOT LIKELY TO RESULT IN A CLAIM AGAINST THE GOVERNMENT FOR FUTURE MEDICAL CARE.
d. INJURY ☒ WAS ☐ WAS NOT INCURRED IN LINE OF DUTY. BASIS FOR OPINION:
Soldier was injured during RPG blast on 20 June 2008

| 12. THE FOLLOWING DISABILITY MAY RESULT ☒ TEMPORARY ☐ PERMANENT PARTIAL ☐ PERMANENT TOTAL | 13. BLOOD ALCOHOL TEST MADE ☐ YES ☐ NO | 14. NO. OF MG ALCOHOL/100 ML BLOOD |
|---|---|---|

**15. DETAILS OF ACCIDENT OR HISTORY OF DISEASE (how, where, when)**
Soldier was injured during RPG blast on 20 June 2008

| 16. DATE 20090302 | 17. TYPED OR PRINTED NAME OF ATTENDING PHYSICIAN OR PATIENT ADMINISTRATOR Garbrecht Kendra E | 18. SIGNATURE << Signed >> Garbrecht Kendra E |
|---|---|---|

**SECTION II - TO BE COMPLETED BY UNIT COMMANDER OR UNIT ADVISER**

| 19 DUTY STATION ☒ PRESENT FOR DUTY ☐ ABSENT WITHOUT AUTHORITY ☐ ABSENT WITH AUTHORITY: ☐ ON PASS ☐ ON LEAVE | 20. HOUR AND DATE OF ABSENCE | |
|---|---|---|
| | a. FROM | b. TO |

**21. ABSENCE WITHOUT AUTHORITY MATERIALLY INTERFERRED WITH THE PERFORMANCE OF MILITARY DUTY** (Explain in Item 30 type of duty missed, hours of duty, and how it did or did not interfere with performance)
☐ YES ☐ NO

| 22. INDIVIDUAL WAS ON ☒ ACTIVE DUTY ☐ ACTIVE DUTY FOR TRAINING ☐ INACTIVE DUTY TRAINING | 23. HOUR AND DATE TRAINING | |
|---|---|---|
| | a. BEGAN | b. ENDED |

**24. RESERVIST DIED OF INJURIES RECEIVED PROCEEDING** ☐ DIRECTLY TO TRAINING ☐ DIRECTLY FROM TRAINING

| 25. MODE OF TRANSPORTATION Government Vehicle | 26. HOUR BEGINNING TRAVEL 0730 | 27. DISTANCE INVOLVED 0 Miles | 28. NORMAL TIME FOR TRAVEL |
|---|---|---|---|

**29. DUTY STATUS AT TIME OF DEATH IF DIFFERENT FROM TIME OF INJURY OR CONTRACTION OF DISEASE**
☐ PRESENT FOR DUTY ☐ ABSENT WITH AUTHORITY ☐ ABSENT WITHOUT AUTHORITY

**30. DETAILS OF ACCIDENT - REMARKS (If additional space is needed, continue on reverse) (Attach inclosures as necessary)**

Soldier was injured during RPG blast on 20 June 2008

| 31. FORMAL LINE OF DUTY INVESTIGATION REQUIRED ☐ YES ☒ NO | 32. INJURY IS CONSIDERED TO HAVE BEEN INCURRED IN LINE OF DUTY (Not applicable on deaths) ☒ YES ☐ NO |
|---|---|

| 33. DATE 20121022 | 34. TYPED NAME AND GRADE OF UNIT COMMANDER OR UNIT ADVISER Derrick, Frodge, O4 | 35. SIGNATURE Digitally Signed By FRODGE.DERRICK.GARLAND. 1103170636 Date:2012.10.22 13:43:16 -04'00' |
|---|---|---|

DA FORM 2173, OCT 72    REPLACES DA FORM 2173, 1 JUN 66, WHICH IS OBSOLETE.    USAPPC V2.00

PROTECTED HEALTH INFORMATION



**NATIONAL GUARD BUREAU**
NATIONAL GUARD BUREAU
111 SOUTH GEORGE MASON DRIVE
ARLINGTON VA 22203-1382

ARNG-HRP                                                      07 Jan 2013

MEMORANDUM FOR Joint Forces Headquarters, Kentucky, ATTN: KG-DOP-HS, 100 Minuteman Parkway, Frankfort, KY, 40601-6168

SUBJECT: Line of Duty Determination (VAUGHAN, Michael D., 1LT, 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)

1. Reference Army Regulation 600-8-4, paragraph 1-7(b), Line of Duty Policy Procedures, and Investigation, 4 September 2008.

2. The Department of the Army Human Resources Command has delegated the authority to the National Guard Bureau to act as the final approving authority for Line of Duty Investigations, to include members in a Federalized status or attending an active Army service school.

3. Enclosed is a DA Form 2173 on 1LT Vaughan for Post Concussive Headache Syndrome that occurred during Operation Enduring Freedom is approved "IN LINE OF DUTY".

4. Point of contact is Mr. Tyler Jackson, 877-831-6096, tyler.s.jackson14.ctr@mail.mil.

BY AUTHORITY OF THE SECRETARY OF THE ARMY:

<< Digitally Signed by Yvonne Gines >>
ROBERTA NIEDT
COL, AG
Chief, Personnel Division